Good morning, Your Honors. Teresa Pearson appearing on behalf of the Bankruptcy Trustee, Ed Wood. This case involves the question of whether or not a creditor has successfully met its burden of proving the subjective tests to the ordinary course of business defense to a preference case. In this case, it is clear that the prima facie elements of the preference have been satisfied. There is no dispute on that point. There is also no dispute on the point that the objective test of the ordinary course of business defense has been satisfied. The question in this case involves the subjective test, which is found in Section 547C2A and C2B. Section 547C2A requires that the creditor show that the debt was incurred in the ordinary course of business of the debtor and the creditor. And in this case, the creditor has put forward no evidence in the record whatsoever that it was ordinary for this debtor to have entered into the agreement in this case. If that's correct, then what? If that is correct, then the creditor has failed to meet its burden of proving the element C2A, and therefore, the ordinary course of business defense fails. And the trustee should prevail on the undisputed prima facie case and recover the preference. Sotomayor, the debt we're talking about, is it the underlying transaction that for services or goods or whatever, there doesn't seem to be anything in the record much about that, but there was first an agreement to pay somebody something to get something, right? Your Honor, actually, you point out something very important in this case, and that is a lack of evidence in the record on what the course of dealing was between the parties before they entered into the settlement agreement. Right. We don't have that. Is that the relevant debt, or is the settlement agreement the relevant debt? Your Honor, I think the settlement agreement is the relevant debt. It's referred to the lack of the first thing doesn't matter on that theory. I think it's right. I think that the creditor could have brought evidence forward to talk about the course of dealing between the parties before the settlement agreement. The creditor didn't bring that evidence forward. And therefore, the only thing this Court can consider is the evidence before it, the settlement agreement. And I think what the creditor has to show is that it was ordinary for this debtor to enter into settlement agreements of the type that are at issue in this case. With this creditor? Yes. I think that's exactly right. Well, they're never going to be able to show that when it's the first time it happens. You're basically saying the first time never counts. Your Honor, I think you can have first-time transactions that would qualify for an ordinary course of business defense. I don't think this first-time transaction does. Let me give you an example. It seems to be inconsistent with what you just said a minute ago. Can you explain to me why there wouldn't be an absolute bar for a first-time? I think an example will help clarify that. Let's imagine you have a debtor that's in the lumber business, and they buy a certain type of lumber. And they've bought that same type of lumber from another party for 12 years. They buy the same quantity roughly every month. And let's say that creditor stops making that kind, or that supplier stops making that kind of lumber. So the debtor goes to a different supplier, buys the same thing, and the same quantity it always would have bought. Wasn't anything to do with the debtor that had... But we're no longer talking about a start-up business, are we, under your hypothetical? That's the problem I'm having. Well, first of all... Because we have to... Let me change your hypothetical. Sure. Let's go back to Lumber Supplier A, and it's the first purchase from Lumber Supplier A. And they renegotiate the terms, because for whatever reason, Lumber Supplier A is nervous about the fact that the buyer doesn't seem to be making regular payments under the terms of the deal that were originally negotiated. I think under that circumstance, it probably is outside the ordinary course of business, because it is a first-time transaction where the debtor has no history. So then the rule would be that a first-time debtor can never avail itself of an avoidance of a preference, because he can't show any regular course of dealing here. A creditor dealing with a debtor for the first time in a situation where the debtor doesn't ordinarily enter into those kinds of transactions. I mean, it's a circular argument, because there can't be anything ordinary about it if it's the first time the creditor ever did it, or the debtor ever did it. It can be if the debtor has been in that kind of transaction with other parties. If the debtor entered into settlement agreements... Maybe I'm the one who's being dense here, but it seems to me that if you're talking about a startup business, and this is the first transaction, by definition, there can't be any other conduct that anybody could point to. So the rule, if we accept your argument, the rule would have to be if this is the first-time renegotiation involving the first debt that this debtor ever owed to a creditor, he can never avail himself of the exception under 546. I think that's true. Even if there were evidence, which there isn't in this case, that of 50 other startups in the same business, which did the same thing and had the same kind of renegotiated debt with the same creditor. I think that the — what happens in the industry is part of the objective test. So your answer is yes. So your answer to what I just said is yes. Yes. Even if there were every indice that, even though they hadn't done it before, this is exactly what they would be expected to do. You know, there's some assumptions here. First of all, that this is a startup company. There is, in fact, no evidence in the record that this is a startup company. I'm saying it's not in the record, but I'm first trying to get to the rule. Okay. So you would say, quite aside from any gap in this record, if we had that evidence, it wouldn't matter. I think that if the debtor has not engaged in a pattern of entering into settlement agreements, that the creditor cannot prove the ordinary course of business defense, because I think that's the way Congress wrote it. Now, what you're not saying, however, as I understand it, is that the — even though my understanding of the case law is that it focuses on the relationship between this debtor and this creditor, although the statute does not read that way to me, that that wouldn't matter. If the debtor could demonstrate that he had entered into similar transactions with other creditors, the fact that he hadn't entered into it with this creditor wouldn't matter. I think that's correct. If the debtor had entered into this transaction in the ordinary course of its business — it's the question of whether you read the C2A provision as having to look at the relationship between this debtor and this creditor together, or whether it was incurred in the ordinary course of business of this debtor and also in the ordinary course of business of this creditor. So you could prove it, I think, either way, although I think that the authorities of this Court have previously said that you look at the relationship between these parties to see whether they've had these types of transactions that they've incurred together before, and I think that's in the Grand Chevrolet case. When we started out, you answered my first question by saying that there wasn't enough evidence in the record. But there has to be — that has to be measured by something. That's correct. So what's the — what is the principle of law by which we measure whether the record is sufficient or insufficient, whether you carry the burden of proof or not? The standard of proof is preponderance of the evidence, if that's the question you're asking. But I don't think it is. It's not the question. You have to measure whether you've carried the burden of proof by what it is you have to prove. So what's the legal principle that you're saying? We measure the — The legal principle is that the creditor would have to show that it was ordinary for — the debt was incurred in the ordinary course of business of this debtor and this creditor. Okay. Translation to me is that your position is, as a matter of law, cannot — a creditor cannot meet the burden when it is a startup situation. Is that — is that the position? I think I would use the term first-time transaction rather than a startup situation, because — Okay. So, all right. That's fine. Your — your position is, as a matter of law, when it is the first transaction between a particular debtor and a particular creditor, it cannot meet the exception. Unless there's a course of dealing, like the lumber supplier example I gave, where this debtor routinely enters into this kind of purchase but can't, for some reason, behind its control. With others? So have you not now rewritten the measure that you've said we had previously adopted, which is the transactions between this creditor and this debtor? Your Honor, that's part of the confusion of the law. And that's part of why we're here for the trustees, because it's not clear what the result should be there. Well, I know that. But you can't decide what the result is without knowing what the legal rule is. So I'm just trying to get from you, if you were writing this opinion, what would you write that the legal principle is? The legal principle that I would write would be that it has to be incurred in the ordinary course of business between this debtor and this creditor, and I wouldn't look at any other industry standard. That would be what I would write. But that's not what you said to me before. You know, we were very specific about that. And I guess I have the same problem that Judge Rimer does, that in that or I'm perhaps a little refined from that. The statute doesn't seem to me to require that it be between the two, but our case law, I gather, does. The case law appears to do so, and I think that's why the bankruptcy judge in this case said, you know, the standards between the subjective test and the objective test are getting very confused. That's why you should appeal this decision. Well, why are they getting confused? If that's the standard, there's nothing confusing about it, but it comes out to a strange result. It's only confusing if we try to accommodate, as the bankruptcy appellate panel did, for example, a case like this one by saying, well, we can't meet between the two because there isn't there can't be a history. If we were firm-minded about it, it wouldn't be confusing. It might be wrong, but it wouldn't be confusing. I agree that if we were – if we had a very bright line, it might be wrong, but it wouldn't be confusing. What we have now is a situation where we have a very experienced bankruptcy judge who says, you can't tell the difference between the subjective and the objective test. We need a bright line that tells us what the rule is. But your – And we bankruptcy. But, Ms. Pearson, your bright line seems to move the line more narrowly than even Grand Chevrolet recognized. In Grand Chevrolet, we looked at the practice in the banking industry and in the automobile financing industry to determine whether or not the exception should apply as to that particular debtor. Now, granted, Grand Chevrolet had been in business for some period of time and apparently had been involved in many, many acquisitions of cars under these commercial terms. But why shouldn't the law recognize the realities of the commercial rule? My response to that would be that Congress didn't write statute that way. It set a separate subjective and objective test for a reason. And, in fact, when you look at the recent bankruptcy amendments that went into effect last year, which don't apply to this case, they change the rule. You know, actually, the subjective and objective stuff is something that was created in the case law. It doesn't — first of all, it's a misuse of the terms subjective and objective to begin with, as used in any other part of the law, because ordinarily, subjective means what's in somebody's head, not whether it's between two of the same parties or different parties. And second of all, the statute as written doesn't read that way at all. I mean, C talks about the terms. A talks about the past debt. And B talks about the ordinary cause of financial affairs with regard to this debt. And I don't see any distinction as to whether one is between the two and one or not. It's not in the statute. I don't know where it's coming from. Well, the statute in subsection C uses the term in the industry, in the course of business. Made according to ordinary business terms. I would regard that as emphasizing the terms. I think that this Court's prior case law, though, has talked about that being the standard in the industry, that you look at what is typical for a car dealer or a mortgage company in its industry. And so that's been interpreted that way. So why, in your hypothetical, couldn't we look to other lumber suppliers to see whether or not they entered into similar types of agreements with lumber purchasers, even though it was a first-time transaction for this debtor? You know, under either version of the rule that you could write, you could write the rule two ways. And I think this is where we're getting a little bit hung up. You can write the rule two ways. You can write the rule that says, it's a very bright line. You have to show it's ordinary between this debtor and this creditor. And that's it. That's where you want us to go, don't you? You could go there. Well, that's not my question. Is that what you want us to do? That's what I hear you saying. You know, under either standard, I think the trustee would prevail, to tell you the truth. What the trustee really wants and why we're here is we want some clarity in the law. Because trustees are out there in the business of trying to recover preferences. So you don't really care about the $70,000. You've got bigger fish to fry. We're really trying to figure out what the rules should be. Because so I'm back to my question. If you're writing the opinion, what rule do you say? The rule that I think is that it should be between the debtor and the creditor looking at their transaction history between each other. But if the rule is between the debtor and the creditor looking at their transactions on historically, I think you could consider their transactions with other people, like in the situation of the lumber supplier. That doesn't help me with the startup company. I come back to the same problem. By definition, it doesn't have any other transactions. That's exactly right. It does not help with the startup company. But it would help with some companies. So the startup company never gets the benefit of the rule. That's how you want us to write the opinion. I think that's right. The startup company does not get the benefit of the rule. At least as to their very first transactions. Right. I mean, when you talk about a startup company, it's presumably not a startup only on the first second it starts up. That's correct. So there may be some history after a month or two or three, but as to its very first transaction. That's right. And we don't know with this debtor whether it had four or five settlements by the time it got to this point in its history. So what do you think the cost of capital just increased? Five points? Ten? If we know. Dried up all together. Yeah. Or maybe zero. It doesn't matter because you can't get it without 100% security on the loan. You know, in terms of suppliers, I doubt that the cost of doing business is going to go up that much. I think suppliers have credit departments and they'll certainly look at credit worthiness of the individual companies that they're dealing with. Whether they have sufficient investment. Even as a startup, a startup can have a significant internal capitalization when it starts up. I think credit managers make those decisions looking at the actual financial picture of the entity that they're dealing with. But in terms of, you know, whether startups, there should be a rule that allows them to have an ordinary course of business. It's also true that your argument in no way depends on this being a restructured debt. If, for example, we were dealing with the first debt before it was restructured, we still have the same problem, right? Your Honor, my argument in no way depends on it being a restructured debt because there's no evidence in the record it was a restructured debt. I understand. What I'm saying is this. If a startup company went out and bought, you know, 10,000 widgets and agreed to pay it off over, you know, in a monthly bill for each widget, each shipment of widgets, that that would be we'd still have the same problem without there having to be a restructuring of the debt. If they started to not, if they went to bankruptcy within 90 days after some of the payments were due. If I understand your question, I would interpret it as can restructured debts be ordinary course? No, I'm saying let's say there was no restructured debt. Okay. It's just the original debt the way the original deal was cut. Whatever that was. Okay. All right. And it wasn't and there was a bankruptcy and there were there had been bills due in the in the preceding 90 days. You would still say the same thing. And the reason this matters is just because it becomes more extreme in terms of startups. Startups at least have to be able to go out and buy things. I think that's right, Your Honor. So you would still say restructured debt has nothing to do with it. It's just an ordinary purchase debt would still be the same. That's correct, Your Honor. Okay. Thank you. Hear from Mr. Herman. Timpson, sorry. Good morning, Your Honors. I'm Jim Hermsen here on behalf of Stratos. The I think the Court is correct. What this case is about, the realities of the marketplace that we see today in common sense. Well, what the case is really about is whether there's any evidence at all of anything that counts toward anything. And as I look at it, you know, the evidence consists entirely of two declarations, both of which basically say, gee, this happens. Your Honor, I think that – I'm sorry. So, I mean, starting from there, why do we even get beyond that? Your Honor, the evidence before the Court, number one, you have the settlement agreement itself. It was attached to the complaint. It was incorporated in the complaint. And Stratos admitted to its authenticity. Even under the R-901, since it was attached to a declaration and it was produced in litigation, it would be before the Court. It's properly authenticated. So you have the settlement agreement, which does create a record as to the disputes and the transactions between the parties up to that point. What does that show about whether that debt was incurred in the ordinary course of business of the debtor and the creditor? I will answer that question, Your Honor, if I could in – I want to put it in perspective. One thing that I want the Court to recognize is that I think that the trustee here has basically stipulated away any defense that they have at their brief, in their opening brief at page 9. It says, the trustee has not disputed that the creditor has proven that the transfers were made according to ordinary business terms in the industry and, therefore, met the requirements of the objective test. In other words, they have conceded that the record that was before the Court satisfied the objective test. We're not talking about the objective test. We're talking about the other two factors. Well, you are. But the trustee, by admitting that the evidence before the Court satisfied the objective test, if you look at KPRO at 1074. That's doing the same thing that BAP did, which is to conflate the two tests. Now, what they are saying under KPRO is that the settlement agreement was ordinary for the industry participants under financial duress. It was ordinary for this industry. What they have stipulated to, by stipulating to the fact that the evidence supports subpart is that this settlement agreement is typical in this industry and the industry as set forth in the declarations of Mr. Kearney and Mr. Mutnick. I don't dispute that at all. Now. But here's the heart of my problem, is to focus on A in particular. Okay. And food catering, in food catering, we basically made the flat statement that the creditor must prove that the debt is ordinary in relation to past practices between the debtor and the creditor. And you ask counsel a question as to whether you need to look at the transactions that led up to the settlement agreement. No, I didn't. Or you look at the settlement agreement. I'm saying you have to, somebody, and the creditor is the one who has to show it, has the burden of showing that the debt, and I assume now we are assuming that the debt was the settlement agreement. That would be, that would be the debt. All right. If that's the debt, then somebody's got to show, the creditor has to show that the debt is ordinary in relation to past practices between the debtor and the creditor. And where is there any evidence of that? I'll refer you to page 8 of the bankruptcy appellate panel's decision, where they stated first time transactions are able to qualify for the ordinary course exception. Let's start with my question. My question is, where is there any evidence that the debt in relation to past practices between the debtor and the creditor is ordinary? I think you look at the settlement agreement and you look at the payment history. The settlement agreement is just the debt. So the question is, where is there evidence that a settlement agreement of the sort that was entered into is ordinary as between this debtor and this creditor? Your Honor, I think it's the first time transaction. And if you look at it All right. The answer to the question is there is no evidence. Is that the answer? No. And then we'll get to why it doesn't matter. Well, Your Honor, we have a settlement agreement here that nobody has suggested is fraudulent. All right. But the answer to the question is, no, there's no evidence. Now we can go forward. Okay. Well, Your Honor, I think the payments that we're talking about, if we're talking about the debt, the debt was incurred as a result of the settlement agreement, which was negotiated at arm's length. Payments flowed from that settlement agreement. And those are the payments that are at issue here. Yeah, but you have the burden of showing that the debt as well as the payments were ordinary with respect to past practices between the two of you. And I think that's the distinction that you have to deal with here when you have a company such as this, and this is the first or only settlement agreement. I understand that's the conundrum. Yes. I understand that's the conundrum. I'm going to get to it, but I'm trying to find out first what evidence there is about the regularity of the settlement agreement, which we have now agreed is the debt. The settlement agreement is the debt. There is no evidence in the record that this creditor and this debtor had a prior relationship that involved the settlement agreement. Okay. If that's the case, then first of all, where is there any evidence that this was a start-up or indeed the first transaction? I think that's admitted if you look at the concession that they made regarding having satisfied the objective test. The objective test, subpart C, requires a fact-specific analysis. And requiring a fact-specific analysis, they conceded that we had proven that according to the ordinary business terms in this industry, basically start-up tech businesses. How do I know that this company is a start-up tech business? Let me put it this way. It doesn't matter whether it's a start-up company or not. Well, if it doesn't matter, then your lack of evidence is fatal. No. It can be. I think the record is sufficient that it's a start-up company based on the two declarations that are submitted and based on the concession. I didn't say anything about Haase or however it pronounces itself. I mean, I don't know what it even does. Well, I would just refer you back to those two declarations. It's having trouble paying its debts. Your Honor, I'd just refer you back to the two declarations of Mr. Mutnick and Mr. Kerney. Yes. But this would be no different whether it's a start-up business or a business that's been in place for a long time. If the company, the creditor and the debtor, enter into a business relationship, which ultimately, for whatever reason, hits a bump in the road and there's a dispute as to how much is to be paid or not paid, and they resolve it in an amicable way through a settlement agreement and payments are made consistent with that settlement agreement over a period of time, that's basically the record that you have here. You have no contention of a lack of an arm's-length relationship. And the settlement agreement actually details the past history between these folks. But the statute doesn't talk about arm's-lengthness. It talks about ordinary. It's looking for a pattern. That's why we're having a problem. It talks about ordinary. But when you talk about a transaction in the ordinary course of business, really what does that mean? And what the Court said in K-Pro, basically, is that a restructuring agreement, even though there isn't a prior history of a restructuring agreement, given the realities of the marketplace these days, which is key, that you can have that be a transaction in the ordinary course. What we have here is a business transaction that was done in the ordinary course. Now, you can... I hear what you're saying, but I'm looking at Mutnick's declaration. I'm looking at Kurnian's declaration. And neither one of them ties their general discussion of the industry in which they operate to this particular debtor. And I think that's a problem that Judge Reimer is wrestling with, that there is no paragraph in either of those declarations that says, attached to my declaration is the settlement agreement. This particular debtor is typical of the debtors that we deal with. Instead, they sort of read like treatises of commercial financing practices. At the time, business, but we don't have any way to figure out whether or not this particular debtor is even in this industry. I agree with you that neither of those two declarations specifically references the debtor. The two declarations were submitted incident to the motion for summary judgment in order to support the KPRO analysis from the Ninth Circuit. The settlement agreement was already in the record at that point in time. It was in the record as it was incorporated within the complaint, and that was acknowledged in the answer. There was no need at that point in time to have to put it in. And again, they put it in in an attachment to the declaration. I don't believe it was Mr. Quackenbush, but I think it's of the trustee. They put it in in their cross motion for summary judgment. So it was there. Nobody ever raised the issue that this was not a startup company. And it was on that basis that they conceded in their brief that the industry, that this was the ordinary, that this type of agreement, this restructuring agreement, was ordinary for this type of industry. They admitted that. So whether there are facts in your mind that are sufficient to support it, we basically have an admission on their part, based on the record, that this industry, the only industry that we're talking about here. What industry is that? Startup company industry? That's a very strange industry. No. It's not the startup industry. It's the industry. The specific terms that they use, I'd have to go back and look at their declarations. But we're talking about these companies that are going out, these tech companies that are attempting to develop product, new age type of product. And that's what Stratis basically provides, engineering support for them. That's what this company was. If it wasn't... But you said the term startup company. We don't know if we're talking about one month, one year, five years. I mean, it's... No, you don't. And again, Your Honor, I think...  expectation of a pattern. The record... I think the record supports that it's a startup company. But I don't even think you need to go there. Because I think what you need to take a look at is the fact that there was a transaction that was at arm's length. Do we even know, anywhere in the record, that this was the first transaction between these two companies? The history between these two companies is set forth in the settlement agreement itself, as to what has transpired between them. There's no record that there was a prior settlement agreement. They entered into a contract for the development of technology that was to be used by this startup company. But again, I don't want you to get hung up on that. Let's assume it is a company that has been in existence a long period of time. For all we know, is there anything in the record, or in the settlement agreement, that would negate the notion that Stratis and Alhazza were dealing with each other for these engineering services for five years? For five years? No. I think the settlement agreement provides for... No, no. I'm asking before the settlement agreement, do we know anything about the prior history of these... It's set forth in the preamble... Where is it set forth? In the settlement agreement, as to allegations of existence of a contract, or denial of a contract. I understand that. That pertains to this particular settlement agreement, but it doesn't tell us anything about whether there was another settlement agreement two years ago, or whether there was... That's correct. Or whether there wasn't one, or whether there was another... It doesn't... Nothing. It doesn't tell you anything about whether there was another settlement agreement, or not. And, again, I just want to direct you back. Look at the transaction. Look how the debt was formed. It was formed as a result of a settlement agreement. There's no allegation of fraud associated with it. It's an arm's length negotiation... All right. But for all we know, there was another settlement agreement, which was structured completely different. There's nothing in the record that would support that. There's nothing in the record that... But there's nothing in the record that would not support it either. That's right, Your Honor. So, if I understand your position correctly, what we should do is simply look at the transaction as referenced in the settlement agreement. Forget about the fact that it's a refinancing, because that doesn't matter, but simply look at the fact that a loan was made for a fixed amount of money. Payments had to be made as specified in the agreement. And that is all that... And then we have evidence of what the, I guess, typical practices in this industry are. And that is sufficient to conclude that this was an ordinary business practice. I think you're close. I think you're close. I think there is enough in this record, particularly given the debtor's concession, that the record supports that the settlement agreement was consistent with the ordinary terms in this industry. And the only industry that is referenced in the declarations are the electronic tech startup type of things. And they're restructuring. But, as I said, if you go back to KPRO, what KPRO says, and as the bankruptcy appellate panel said, citing Huffman v. New Jersey Steel, which is out of the Western District of Virginia Bankruptcy 1995, that a first-time transaction isn't automatically excluded. And that's what counsel is arguing. And what I'm saying, whether this is a first-time transaction is not material here. What you – what I expect you to do is to look at this as to whether it is an arm's length business transaction. It isn't the whole object of the exercise to see not whether this was arm's length, but to see whether there's an effect – I mean, it's a preference for you as contrasted with other credits. The preference review is to – hence the – hence the ordinary inquiry. And I still come back to the same concern I thought, which is if it is a first-transaction situation, I'm not saying it should never be considered because there's always a first time, but how do we square that with food catering? And what is the rule that you put in? You say, okay, it's a first transaction, there is no past history. But if we show X, what's X? If we show X, it nevertheless qualifies for the exception. I think the past history, Your Honor, with all due respect that you need to look at, is the payment history relating to the settlement agreement. Well, but it – it talking – I mean, it's two components. There's the debt and the payment. That's right. That's right. And if you look at the debt, and the debt, what they are concerned about when they talk about the ordinary course is, is this an arm's-length transaction? Is there fraud? Is this the type of thing where it's debt – That's not what the statute – I'm sorry, Your Honor. I think we keep saying this, and maybe it's not useful, but that's not what the statute says. It could have said that. It could have said, is it an arm's-length transaction in which there's no fraud? But it doesn't say that. It is – it instead is written in terms of a path. I think the case law says that, Your Honor. I mean, there are lots of things that the case law says about Section 547 that you don't find – you don't find in the statute. But this is – what I'd ask you to do is look at it from a common-sense standpoint. You can look at the cases, and the preference is to try and protect other creditors from a creditor taking advantage of the debtor's situation, and by forcing the debtor to do something that is out of the ordinary. And what's a – the typical example of that would be where you have a contract, and the debtor has been making payments, but maybe they've slipped a little in making them on time, and all of a sudden, the creditor comes in and says, you know, I want a double payment this month, or I want a payment in a different amount. Or four times the payment, as we saw in one – as we saw in one of the cases. That's the typical voidable preference. This is not ordinary here. This is a payment that is not called for in the agreement, and is not like the payments that the debtor made for the past six months, but appears in hindsight to have been a nervous creditor coming in and trying to get as much out of the assets of the business as he could before the business went under. At the time of the settlement agreement? Your Honor, what ends up happening, and it's – again, this is the realities of the marketplace. When you have these startup companies that are supported by venture capital, they anticipate that there's going to be a certain burn rate of their capital. And sometimes it burns a little bit faster than otherwise. And they're always out soliciting more funds as the product development goes on. They can't make the debt payments that are originally anticipated by the contracts, contemplated by the contracts. So what they'll do is they'll go in and restructure these debts. I suspect that probably 99 out of 100 creditors could go in and put a hammer on them, take them out of business, if they don't have the ability to go out and raise more money. And these restructuring agreements, or in this case, the settlement agreement, which in essence restructured over a million dollars' worth of debt, are designed to give these startup companies life. It's give them an opportunity to create and develop the ideas that they have been working on. It's the ability to allow the families, the folks that are working there, to continue in existence. They don't all work. And the creditor hopefully gets paid in the end. And the creditor? Maybe. And the creditor hopefully gets paid. And that's what happened here. And so this was a legitimate debt. It was ordinary for this industry as conceded by the debtor. And they went down the road. And you can look at the payments. The payments were consistent for the most part, in the same form as the bankruptcy appellate panel noted. They said they felt the two payments were tardy. Judge Glover didn't agree. But that doesn't end the analysis. Because there is nothing in the record to show that my client did anything other than can try and accommodate this business to allow it to continue. And that's what these laws are designed to protect. And I think that's what KPRO is trying to do, is protect clients like I'm representing here in these difficult circumstances. Thank you, Mr. Hermsen. Our questions have used up way more time than you had, so we'll give you a few minutes for rebuttal to equalize it. Thank you, Your Honor, I'll keep it brief. Creditors counsel argues that by not contesting the 547C2C element, the objective test, that the trustee has somehow conceded the facts that are necessary to prove C2A and C2B, the subjective test. If you look at page 94 of the record, and you also look at the brief cite that my colleague mentioned, I think you would see that it was simply, we don't contest it, not we admit or we agree. The question here is really the burden of proof. And in this case, the creditor had the burden of coming forward and showing some evidence connected to this debtor in order to meet the requirements of subsection A and subsection B. What about B? We haven't talked about B at all. Maybe you can give us a very short dissertation. I mean, the only issue about B, I gather, is that some of the payments were late? Or is there any other issue? There are the main issue is that the bankruptcy appellate panel got the burden of proof wrong in applying two of the four grand Chevrolet factors. The first factor deals with untimely payments, and we think the bankruptcy appellate court correctly noted that as the debtor spiraled toward bankruptcy, its payments became later and later and outside the terms of the contract. The second element, I think the bankruptcy court appellate panel correctly resolved it by saying that the form and amount of the tender of the payments hadn't changed, and that factor appropriately weighed for the creditor. So you have two factors on which there's evidence, and this Court has said previously in, I think it was food catering and housing, that lateness weighs more heavily than other factors. So given that lateness weighs more heavily when there are two factors proven, the trustee should have prevailed. The other thing that I don't understand why lateness weighs. I can understand why earliness would weigh. But I don't understand why lateness weighs. The way that this Court and the lower courts have interpreted the first element of the grand Chevrolet test is that as you're looking at what's ordinary between the parties, you want to compare what happens when the debtor is healthy versus what's happening as it's spiraling towards bankruptcy. And if its healthy behavior is that it's always paid on time, like this debtor did in the first four months of the settlement agreement, either paid on time or the check cleared within three days of the due date, indicating that the check was probably delivered close to or on the due date. And why is that? Ultimately, we're trying to find out whether there was a preference here. And if they've been paying every month, and they still paid every month, but they paid a little late, why does the fact that they paid late suggest that the creditor was being favored in some fashion as opposed to hurt, i.e., getting their ordinary payment a little late? Because the way that Congress has conceptualized the statute, you don't have to look at the subjective intent of the pay or you don't have to look at whether they meant to prefer a creditor, because Congress wanted to write a rule that was something a trustee could administer without having that kind of subjective mental intent. Did you mean to favor mom as the preferred creditor, or did you mean to favor this supplier or that supplier? So the courts have tried to adopt a little bit more of a standard that you can determine from the evidence that's going to be available. And so lateness has always factored in. Food catering and housing was very clear that lateness is a factor that weighs very heavily. Where the bankruptcy appellate panel erred was in incorrectly applying the burden of factors, because the bankruptcy appellate panel noted correctly there was no evidence on those factors, but then said it was the trustee's problem and that that should be held against the trustee. Well, Section 547G is very clear that it's the creditor's burden of proof, and so the lack of evidence on those points should weigh against the creditor and not weigh against the trustee, which is why when you look at the four-factor test with the one factor that weighs very heavily in favor of the trustee, one factor that weighs in favor of the creditor, and two factors on which there's no evidence, the trustee should have prevailed on that. All right. Thank you. Any other questions? Thank you, counsel, both of you for the matter just argued, which will be submitted. The Court will take a brief recess before hearing the final two matters on the calendar. All rise.
judges: Rymer, Berzon, Tallman